IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DR. TOMAS LARRIEUX CRUZ, et. al.,

Plaintiffs,

v.

CONSEJO DE EDUCACION DE PUERTO
RICO, et. al.,

Defendants.

CIVIL NO. 17-2030 (PAD)

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

The present case arises out of a change in the governing bodies that had previously issued government certifications and licenses for schools. In 2010, the Puerto Rico government passed Reorganization Act No. 1 of 2010 ("Act No. 1") which eliminated both the Puerto Rico Council on General Education and the Puerto Rico Council on Higher Education and fused both entities' powers, duties and responsibilities into a new entity, namely, co-Defendant Consejo de Educación de Puerto Rico ("Consejo"). Under Act No. 1, Consejo then became the governmental agency in charge of licensing all public and private institutions which provide basic and higher education in Puerto Rico.

Co-Plaintiff Colegio Universitario de Mediación Profesional ("Colegio") was an educational corporation organized under the laws of the Commonwealth of Puerto Rico with its principal place of business in Aguadilla, Puerto Rico. Colegio taught courses in alternate dispute resolution, negotiation and professional mediation, and issued the corresponding certificates and diplomas to the participants. Co-Plaintiff Tomás Larrieux Cruz ("Larrieux" and collectively with Colegio, "Plaintiffs") was Colegio's owner and its

_____

Principal Executive Officer.

On November 20, 2003, Consejo issued license No. V-50-23 ("the License") to Colegio, which authorized it to operate a private school at the vocational, technical and postsecondary non-university level in Puerto Rico. The License was valid for a period of up to four (4) years, and Colegio twice thereafter requested its renewal, in 2007 and in 2011.

Colegio applied for the License's renewal once again in 2015. At that time, Consejo determined that it lacked legal jurisdiction to issue the Colegio an operating license, due to certain changes made to the rules and regulations approved since Colegio's previous petition for renewal, among them the passage of Act No. 1. Thus, it concluded that Colegio did not need to apply for a license renewal and that, as a governing body, it then lacked jurisdiction over Colegio's academic offerings. It further concluded that the use of the term "Colegio Universitario" ("University College"), in Colegio's official name, was illegal. Colegio petitioned for reconsideration and objected to the agency's determinations several occasions. An administrative hearing was held before a Hearing Examiner who affirmed the agency's determination. Colegio later appealed this determination, which the Puerto Rico Court of Appeals also upheld. The Puerto Rico Supreme Court declined to review the case.

On August 2, 2017, Plaintiffs filed the present case against Consejo and various Consejo's officials in their personal and official capacities, to wit, Ricardo Aponte Parsi ("Aponte"), David Báez Davila ("Báez"), María L. Varas García ("Varas"), and Blanca

Rivera Alicea[1] ("Rivera" and collectively with Consejo, "Defendants").  Plaintiffs aver that Defendants violated their civil rights, under 42 U.S.C. §1983 and §1988, that Defendants' actions and/or omissions were performed without due process of law, violated their equal protection rights and seek compensatory, declaratory and injunctive relief.

Before the Court now are two dispositive motions filed by Defendants in this case, one filed by co-Defendant Aponte, and another one by co-Defendants Consejo, Varas, Rivera and Báez. (Docket Nos. 124 and 125).  Also pending are Plaintiffs' oppositions thereto. (Docket Nos. 126 and 127).

On September 5, 2019, the presiding District Judge referred the above-mentioned motions to the undersigned for a Report and Recommendation. (Docket No. 130).

For the reasons explained below, it is recommended to the Court to GRANT Defendants' Motions for Summary Judgment and this case be DISMISSED.

## STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56 (c).  Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law."  Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

---

[1] All individual Defendants' spouses and their conjugal partnerships were also sued by Plaintiffs.

Dr. Tomás Larrieux Cruz, et al. v. Consejo de Educación de P.R., et al.
Civil No. 17-2030 (PAD)
Report and Recommendation
Page 4
_____

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not- genuinely controverted.'" Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by

reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c). If they so wish, they may submit a separate statement of facts which they believe are in controversy. Time and again, the First Circuit has highlighted that facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010) and Colón, 869 F.Supp.2d at 226. Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." Hernández, 486 F.3d at 7.

### UNCONTESTED MATERIAL FACTS

The Court finds the following material facts to be uncontested based on the parties' submissions.

1. The Puerto Rico General Education Council was created to evaluate goal compliance in the public education system. P.R. Laws Ann. tit. 3, §148, *et seq.*

2. In 1999, the law was amended to allow the Puerto Rico General Education Council the power to authorize, through the issuance of licenses, the establishment and the operation of private schools at the preschool, elementary, secondary, vocational, technical and highly skilled, and postsecondary non-university levels. Similarly, it could modify, suspend or cancel these licenses granted to schools that failed to comply with its regulations. P.R. Laws Ann. tit. 3, § 148c (1), (6).

3. The Puerto Rico Council on Higher Education was created under Act No. 17 of June 16, 1993, P.R. Laws Ann. tit. 18 § 852, *et seq.* It had the power to license and accredit public and private higher education institutions. Moreover, it had the power to deny, suspend, cancel or modify any license granted for those institutions

_____

that did not comply with the provisions of the act. P.R. Laws Ann. tit. 18 § 852e (6).

4.  Act. No. 1 consolidated the Puerto Rico General Education Council and the Puerto Rico Council on Higher Education into the Consejo de Educación de Puerto Rico. Docket No. 46, Exhibit 1, p. 7; D. Exhibit 8.

5.  Consejo was created as part of the Executive Branch to implement and administer public policy on education standards in Puerto Rico. Accordingly, Consejo was defined as a government agency.  D. Exhibit 8, Act No. 1, Art. 4.

6.  The issuance of licenses for the establishment and operation of institutions of education in Puerto Rico is among Consejo's faculties.  It was also delegated with the authority to regulate the licensing process for educational institutions, including the issuance of first-time licenses. Where relevant, Article 3 (p) of Act No. 1 defines the renewal of licenses in the following manner:

> A permit that the Council of Education of Puerto Rico issues for the continued operation of an educational institution in Puerto Rico, when it already holds an authorization license that has reached its expiration date, *after determining that the institution complies with minimum requirements, terms and conditions as established for such renewal under this plan and pursuant to the regulations that the Council approves under its auspices*, in conformity with the public policy that has been set forth by this Plan. (Emphasis added).
> P.R. Laws Ann. tit. 3, Ap. XII, Art. 3(p); D. Exhibit 8.

7.  Consejo was composed of nine (9) board members appointed by the Governor with the consent of the Senate.  P.R. Laws Ann. tit. 3, Ap. XII, Art. 5.

8.  Consejo's general fund main source of revenue was legislative appropriations.  For fiscal year 2014-2015 the Government approved $2,681,000 for operations.

_____

Docket No. 18, Exhibit 3, p. 10.

9. Colegio is a non-profit educational corporation organized under the laws of Puerto Rico, that teaches alternate dispute resolution, negotiation and mediation and gives certificates and diplomas. Docket No. 1, ¶ 3.2.[2].

10. Plaintiff Larrieux is licensed as a mediator by the Puerto Rico Supreme Court and is Colegio's owner and principal executive officer. Docket No. 1, ¶ 2.1

11. On November 20, 2003, the Puerto Rico General Education Council issued license no. V-50-23 to Colegio. At that time, Colegio was authorized to operate a private school at the vocational, technical, highly skilled, and postsecondary non-university levels in Puerto Rico, and offered courses in alternate dispute resolution, mediation, negotiation and granted certificates and/or diplomas to those who successfully completed the courses. The license was valid for a period of up to four (4) years. Docket No. 46, Exhibit 1, p. 1.

12. Although Colegio included the words "Colegio Universitario" in its name, it did not offer certificates and diplomas for basic education courses (preschool, elementary, secondary, vocational, technical and highly skilled) or higher education (i.e. university). Docket No. 46, Exhibit 1, p. 1.

13. Since November 20, 2003, the License was renewed by Colegio for successive four-year periods, the last of which ended on November 19, 2015. On October 28, 2015, Colegio applied for a renewal of the License for an additional term. Docket No. 46,

_____

[2] While the Court does not normally accept allegations in the Complaint as evidence, these allegations were admitted by Plaintiffs in their opposition to Defendants' motions for summary judgment.

_____

Exhibit 1, p. 1.

14. At the time the renewal application was submitted on October 28, 2015, co-Defendant Aponte was Consejo's President. Docket No. 1, ¶ 2.4.

15. Colegio's request was evaluated pursuant to the provisions of Regulation 8562, "Regulation for the Licensing of Basic Educational Institutions in Puerto Rico". The applicable regulatory provisions are:

"Section 3.1 – General Applicability

The norms that are described in this Regulation are applicable to any natural or artificial person, or group of them, operating within the territorial confines of Puerto Rico as a basic educational institution, as defined by this Regulation (private, public or municipal); that offers or in any way declares, promises, announces or states its intention of awarding degrees, diplomas, certificates, titles or other official academic awards from among those that are deemed herein as basic, regardless of the location where the courses are offered.

These norms are applicable, moreover, to institutions that demand a high school diploma as an admission requirement (secondary school) or its equivalent and award titles, diplomas or certificates that are meant to prepare a person for a particular occupation or vocation, that may be performed upon finalizing studies.

Section 3.2 – Exemptions or non-applicability

This Regulation is not applicable to institutions, the offerings or the services that are indicated in the following sections, *therefore they are deemed to be exempt from licensing requirements.* (Emphasis added).

Section 3.2.4 – Trainings, Workshops, Professional Improvement Courses and Other Similar Activities

The CEPR does not exercise jurisdiction over training, workshops, seminars, talks, short courses or *professional*

*improvement or capacity development, that do not lead to a Certificate, pursuant to the definition found in Article 7 (10) of this Regulation.* Nor are Continuing Education courses for different occupations and professions and test reviews for Examining Boards or others similar in nature. (Emphasis added).

Article 7 – Definitions
The following terms and derivatives that are listed as follows are included under the applicability of the definition that is set forth, unless the context itself in which they are embedded would provide some other meaning.

-------------------------------------------------------------------------

10. Certificate - A formal document that certifies that the person completed to satisfaction a program of courses of post-secondary vocational or technical training that pose elevated occupational skills. Such a program may require up to two years of studies.
The certificate is usually acknowledgeable for the exercise of an occupation.

-------------------------------------------------------------------------

18. Diploma – A formal document that certifies that a person completed a program of studies.

-------------------------------------------------------------------------

24. Continuing Education – Courses on specific subjects that are not conducive to a degree, regularly accountable in contact hours and required for the renewal of professional licenses, labor refresher courses or personal development. (Emphasis added).

-------------------------------------------------------------------------

25. Technical Post-secondary education – an educational level that provides a formal program of studies under a curriculum that is designed for students that have completed a high school level degree or its equivalent but is not in the nature of a university education.

-------------------------------------------------------------------------

34. Institution of Basic Education – A public educational institution, whether private or public or municipal, at a pre-school, elementary or secondary level (intermediate or high school level), and post-secondary technical-vocational. These offerings allow for the completion of study programs conducive to a degree, diploma or certificate. They do not include institutions whose only service is that of caring for children (Pre- kinder), these are under the jurisdiction of the Department of Family.

-------------------------------------------------------------------------

_____

38. Technical Vocational Post-Secondary education institution –
those that offer educational vocational or technical post-secondary
programs identified in Reorganization Plan No. 1 as post-secondary
institutions at a non-university level that are vocational, technical
and highly skilled in nature.

-----------------------------------------------------------------------------

40. Licensing – Process by which an Educational Institution is
authorized to operate in the jurisdiction of Puerto Rico after
meeting requirements in the public policy of Reorganization Plan
No. 1 as set forth in this Regulation.

41. Authorization License – Permit issued by the CEPR to begin to
operate in Puerto Rico as an Educational Institution with the
academic offerings and in the location or locations indicated in the
license or some certification from the Council that is a complement
to this, after a determination indicating that the institution
complies with the licensing criteria set forth in Reorganization Plan
No. 1 and by this Regulation. The Authorization License shall be
awarded for a period of five (5) years.

-----------------------------------------------------------------------------

42. Renewal License – Permit issued by the CEPR allowing the
continued operation of an Educational Institution in Puerto Rico,
when a previous license has been obtained and the date of
expiration has been reached, after determining that the institution
complies with licensing criteria and terms and conditions
established by this Regulation. This license is for five (5) year
periods. (Emphasis added).

52. Academic Program – Set of organized, educational courses,
assignments and offerings of such a nature that they entitle a
person that completes them to the achievement of a Diploma or
Certificate."
Docket No. 46-1, p. 7-8.

16. After the consolidation of the Puerto Rico Council on General Education and the

Puerto Rico Council on Higher Education, Consejo granted Colegio's second

License renewal.  The License was valid from March 30, 2012 until November 19,

2015.  Docket No. 46, Exhibit 1, p. 1.

17. On October 28, 2015, Colegio again sought renewal of the License. Docket No. 46, Exhibit 1, p. 1.

18. On November 10, 2015, Consejo's Accreditation and Licensing Area ("ALA") requested certain information from Colegio to "deem that the request was complete and properly submitted pursuant to section 12.5 of the Regulation [8562]". The information that ALA requested was:

   1. Corroborate if the courses offered by the institution are equal to short courses, trainings, professional improvement workshops, continuing education, and similar activities, as defined by Section 3.2.4 of Regulation 8562 (2015). Moreover, indicate what kind of certificate will the student achieve upon conclusion of the course, if one of assistance or participation. Once this information is confirmed, we will be able to continue evaluating the request and determine if the Council [...] has jurisdiction over the academic offering.

   2. Clarify if the institution submitted to the *CEPR* a n a m e change from *Colegio de Mediación Profesional* to *Colegio Universatiorio de Mediación Profesional,* and indicate that date of approval. Furthermore, provide the evidence.
   Docket No. 46, Exhibit 1, pp. 1-2.

19. On November 17, 2015, Colegio replied to ALA's request and stated:

   1. Our institution is duly authorized by the Puerto Rico Council of Education. License No. V 50-23 for operation of a special program at a non-university, post-secondary level. We offer training in the field of Alternative Mechanisms for the Solution of Conflicts. Our courses are conducive to Certificates and/or Diplomas, as defined by Regulation 8562 (2015) section 3.2.4 and article 7. Each one of our Certificates or Diplomas has been previously endorsed by the Puerto Rico Council of Education. Upon completion of the program of choice, a student receives a Certificate or Diploma as attestation of completion of requirements by 100% participation in classroom attendance (contact hours). All our programs require classroom attendance

and are accounted by classroom hours.

    2. From the very beginning our institution has been duly authorized by the Council with the name: COLEGIO UNIVERSITARIO DE MEDIACION PROFESIONAL AND/OR UNIVERSITY COLLEGE OF PROFESSIONAL MEDIATION. See previous authorizations. The registry at the Puerto Rico Department of State is included. I certify that the name has never been changed.
Docket No. 46, Exhibit 1, p. 2.

20. On December 21, 2015, Consejo denied Colegio's request. The letter was signed by Consejo's Director of the Accreditation and Licensing Division, co-Defendant Rivera.  Docket No. 1, ¶ 3.11.

21. Consejo denied the renewal of the License stating: "(a) the courses offered by the Colegio were (are) in effect training and/or continuing education courses that did not (and do not) fall within the licensing and regulating jurisdiction of the Consejo; (b) that in accordance with said finding, it was and is not necessary for Colegio to apply for, or to obtain, a License or License renewal from the Consejo to offer and teach such courses; (c) that the use of the term "Colegio Universitario" was and is reserved, under applicable laws and regulations, to institutions of higher learning offering associate degrees and bachelor's degrees in more than one discipline, profession or occupation; and (d) that since Colegio did not (and does not) offer associate degrees or bachelor's degrees to its students and course registrants and participants upon their completion of course requirements, Colegio can no longer promote itself as, or use the term "Colegio Universitario", as part of its institutional name or advertising".  Docket No. 1. ¶ 3.11.

_____

22. On January 12, 2016, Colegio filed an administrative "notice of disagreement" to contest Consejo's denial to renew the License.  Colegio again requested the renewal of its license, and to recognize the use of the term "Colegio Universitario"  as part of its institutional name.  Docket No. 46, Exhibit 1. P. 3.

23. Consejo's President sent the Colegio's objection to the Board of Governance for resolution of the matter.  On June 30, 2016, the Board concluded that Colegio did not need a license from Consejo to operate as a postsecondary institution because the academic offering did not fall within its jurisdiction. Thus, and by means of Certification No. 2016- 347, it cancelled License V-50-23.  Consejo clarified, however, that this decision did not imply that the Colegio could not continue its offer of continuing education and professional development trainings in the area of conflict resolution and mediation.  Notice of Certification No. 2016-347 was sent to Colegio via a letter dated July 13, 2016.  Docket No. 46, Exhibit 1, p. 3.

24. On August 5, 2016, Colegio presented a second written objection, and requested reconsideration, alleging that its academic offering was the same that the Council had previously issued and renewed (License V-50-23), since 2003.  Colegio argued that it was incorrect to find that the nature of the academic offer did not fall under Consejo's jurisdiction.   Colegio sustained that its educational offer was for intensive courses conducive to Certificates or Diplomas pursuant to Regulation 8562, over which Consejo had jurisdiction to renew the license requested.  Consejo then appointed a Hearing Examiner to channel the claim through the agency's administrative process.  Docket No. 46, Exhibit 1, p. 3.

25. On September 6, 2016, Consejo's legal representation requested a stay of proceedings to request an amendment to Certification No. 2016-347, which was granted. On November 4, 2016, Consejo notified Colegio that Certification 2016-347 had been amended. Once again, Consejo determined that Colegio's academic offer was for trainings and continuing education which fell outside Consejo's jurisdiction pursuant to Act No. 1 and Regulation No. 8562. Docket No. 46, Exhibit 1, pp. 3-4.

26. Consejo noted that the previous renewal of License V-50-23 in 2011 was analyzed pursuant to Council Regulation No. 6245 of 2000 which was in effect at the time, and which did not take into consideration the changes that were made by the passing of Act No. 1. These additional changes of Act No. 1 removed Colegio's academic offerings from Consejo's jurisdiction. Hence, Consejo annulled Regulation 6245 and replaced it with Regulation No. 8310 of 2012. Regulation 8310 was later amended by Regulation 8562, which was in effect at the time Colegio presented its license renewal request in October 2015. Docket No. 46, Exhibit 1, p. 4.

27. On November 16, 2016, Colegio presented its third objection in writing, with similar arguments to the ones previously offered. However, it now alleged that the amendment to Certification No. 2016-347 violated its due process rights. Colegio then requested an administrative hearing, which was held on January 24, 2017. The parties made their appearances along with legal representation, documentary evidence was stipulated and presented, and the parties presented the testimonies

of witnesses and cross examined the witnesses.  Docket No. 46, Exhibit 1, p. 4.

28. On May 18, 2017, Consejo issued a Final Resolution, adopting the Report and Recommendation issued by the Hearing Examiner[3] and reaffirmed its denial of the License renewal, for the same reasons it had previously given, namely, pursuant to Act No. 1 of 2010 and Regulation 8562, Consejo lacked jurisdiction to issue a license over Colegio's academic offer. Docket No. 46, Exhibit 1, p. 4.

29. Among other things, the Final Resolution noted that Colegio had been unable to refute witness testimony during the hearing that the certificates and diplomas issued by Colegio did not meet the definitions required for Consejo to have jurisdiction over Colegio's license.  Docket No. 46, Exhibit 1, p. 4.

30. Specifically, Consejo stated that:

"[…] pursuant to the evidence that was admitted, the CEPR [Consejo] has no jurisdiction over the academic offering of the CUMP [Colegio] because:
1) the curriculum of the CUMP does not comply core subject-matter courses conducive to a comprehensive program of studies, 2) the certificates awarded by the CUMP only record, pursuant to the documentation that was provided in the Request for Renewal of License, attendance and participation, 3) the certificates and/or diplomas do not award a degree as such, 4) the academic offer is not tantamount to an academic program because it does not have core subject-matter courses or practicums, and 5) the academic offerings of the CUMP are short-lived in duration, between 36 and 231 clock hours and imparted in the manner of courses, seminars or workshops, not conducive to an acknowledged certification by authorities equivalent to the Certificate of a formal education."
Docket No. 46, Exhibit 1, pp. 4-5.

---

[3] The date when the Examiner issued the Report and Recommendation is not before the Court, yet it is evident that it was issued between the January 24, 2017 evidentiary hearing and the April 28, 2017 Consejo meeting.

31. Consejo upheld its initial determination that it lacked jurisdiction over Colegio's academic offerings because they did not require a license. Docket No. 46, Exhibit 1, p. 5.

32. Colegio requested reconsideration of the Resolution and Consejo did not act upon the request.  Docket No. 46, Exhibit 1, p. 5.

33. On July 10, 2017, Colegio filed a Petition for Judicial Review before the Puerto Rico Court of Appeals, case number KLRA-2017-0575.  Docket No. 46, Exhibit 1.

34. On February 28, 2018, the Puerto Rico Court of Appeals upheld Consejo's  ruling that it lacked jurisdiction over the courses offered by Colegio in accordance with the laws and regulations in force at the time of the license renewal request.  Docket 46, Exhibit 1.

35. The Puerto Rico Court of Appeals concluded the following: "Colegio has not presented evidence that leads us to conclude that the exercise conducted by the administrative forum was erroneous or unreasonable. To the contrary, upon evaluating the definitions of the concepts that are in controversy under Section 3.2.4, that the Council invokes as reasons for not assuming jurisdiction, and the documentation that the Colegio presented during the administrative hearing, we determined that the conclusion of the administrative forum is reasonable. Considering this and the foregoing exposition, we determine that the error pointed out was not committed".  Docket No. 46, Exhibit 1, p. 10.

36. On March 21, 2018, Colegio filed a *Certiorari* petition before the Puerto Rico Supreme Court, which was denied (CC-2018-319).

_____

37. Colegio then filed a reconsideration, which the Puerto Rico Supreme Court denied on June 1, 2018 and the case is final and unappealable.  Thus, the Puerto Rico Court of Appeals' holding became final.

## LEGAL ANALYSIS

Defendants Consejo, Varas, Rivera and Báez urge the court to dismiss the case on three (3) distinct grounds.  First, they posit that Consejo is an arm of the state which has not waived its immunity, and therefore, assert that the Eleventh Amendment bars Plaintiffs from bringing this case.  Second, they assert that the doctrine of qualified immunity shields the individual Defendants from liability.  Finally, Plaintiffs posit that the doctrines of res judicata and/or collateral estoppel bar this case, insofar as the Puerto Rico Court of Appeals rendered a final judgment upholding the agency's determination that the actions Consejo undertook were valid and proper and afforded Colegio due process.  Consequently, Defendants argue that Plaintiffs are estopped from bringing the same claims now before this Court.  Co-Defendant Aponte, like the individual Defendants, alleges he is protected by the doctrine of qualified immunity and that Plaintiffs are estopped from bringing this case.

For the reasons explained below, it is recommended to the Court to GRANT both Motions for Summary Judgment and this case be DISMISSED WITH PREJUDICE.

### A.  Eleventh Amendment Immunity.

Under the Eleventh Amendment the "[j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any

_____

Foreign State".  U.S. Const. amend. XI.  Sovereign immunity for suits "against one of the United States" also extends to bar suits against state agents and instrumentalities when the action is in essence one for the recovery of money from the state.  Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429, 117 S.Ct. 900 (1997).  Two general exceptions apply to the extended reach of the Eleventh Amendment. Congress may abrogate a state's immunity by expressly authorizing such a suit pursuant to a valid exercise of power, or a state may waive its sovereign immunity by consenting to be sued in federal court.  College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670, 119 S.Ct. 2219 (1999).

Even though Puerto Rico is an unincorporated territory of the United States, it is the settled law of the First Circuit that Puerto Rico enjoys the same immunity from suit that a state has under the Eleventh Amendment.  Arecibo Cmty. Health Care, Inc. v. Commonwealth of Puerto Rico, 270 F.3d 17, 21 n.3 (1st Cir. 2001); Ortiz–Feliciano v. Toledo-Dávila, 175 F.3d 37, 39 (1st Cir. 1999).

The Court gives short shrift to the first argument, insofar as Plaintiffs admit that Consejo is an arm of the state and, thus, immune from suit. (Docket No. 126, p. 12). However, Plaintiffs are also correct in that, under the doctrine established in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908), sovereign immunity bars claims for monetary damages against the officials acting in their official capacities, but a plaintiff can seek prospective injunctive relief against state officials when the claims arise out of official action that contravenes the Constitution.

In view of the above, it is recommended to the Court to DISMISS WITH

_____

PREJUDICE the causes of action against Consejo, leaving the cause of action for prospective injunctive relief against the individual officers alive. Nonetheless, the causes of action against the individual Defendants will also ultimately fail for the reasons detailed below.

### B. Qualified Immunity.

It has been well established that qualified immunity protects public officials, acting in their individual capacity, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). This doctrine gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.

A familiar two-step inquiry determines whether a defendant is entitled to qualified immunity. First, the Court inquires whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation.[4] Second, the Court inquires whether the violated right was clearly established at the time that the offending conduct occurred. The second, "clearly established," step itself encompasses two (2) questions: whether the contours of the right, in general, were sufficiently clear, and

_____

[4] The Court notes that Plaintiffs' starting point for this argument is misplaced, insofar as they aver that the Court must examine if the allegations in the Complaint, if deemed true, establish a violation. At the summary judgment stage, there *is now record evidence* that must be examined to make this analysis, and the allegations of the Complaint no longer matter. At this stage, then, it is the *established facts and evidence* that must be viewed most favorably to the party opposing summary judgment to determine whether a constitutional violation exists. Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 840 (1996).

whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right. Hunt v. Massi, 773 F.3d 361, 367 (1st Cir. 2014).

For an asserted right to be "clearly established," its "contours ... must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id.

In the present case, the Constitutional right allegedly violated was due process. Defendants posit that Plaintiffs were afforded the "opportunity to be heard at a meaningful time and in a meaningful manner" regarding the alleged deprivation of their property, the license in question, and thus, no constitutional violation can be established. See Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893 (1976). Furthermore, Act No. 1 grants Consejo the power to deny, modify, amend, cancel or suspend license or accreditation granted by it to education institutions that do not comply with the provisions of the Act. As such, Defendants were acting in compliance with the powers and duties delegated to them by the Act. In other words, they could not have known that they were violating the law.

It has long been held that an essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.

Ct. 1487, 1493 (1985). Courts have described "the root requirement" of the Due Process clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786 (1971). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. Board of Regents v. Roth, 408 U.S., at 569-570, 92 S.Ct., at 2705; Perry v. Sindermann, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698 (1972).

In general terms, it has been established that a person has a property interest in a license and that a hearing is typically required before the state may deprive an individual of said property. See Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586 (1971) ("except in emergency situations ... due process requires that when a State seeks to terminate an interest such as that here involved, it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective") (internal quotation and citation omitted); Mard v. Town of Amherst, 350 F.3d 184, 192 (1st Cir. 2003) ("[i]n general, the state must provide some kind of hearing before depriving an individual of a protected property interest") (internal quotation and citation omitted); Beauchamp v. De Abadia, 779 F.2d 773, 775 (1st Cir. 1985) (physician entitled to hearing before license could be revoked).

Even decisions finding no constitutional violation in termination procedures have relied on the existence of some type of pre-termination opportunity to respond to the alleged charges. For example, in Arnett v. Kennedy, 416 U.S. 134, 164, 94 S. Ct. 1633,

1649 (1974), the United States Supreme Court found no constitutional violation where the employee had access to the material upon which the charge was based and had an opportunity to respond orally and in writing and present rebuttal affidavits; see also Barry v. Barchi, 443 U.S. 55, 65, 99 S.Ct. 2642, 2649 (1979) (no due process violation where horse trainer whose license was suspended "was given more than one opportunity to present his side of the story").

Thus, it is evident that a pre-termination "process" though necessary, need not be elaborate.  Indeed, "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." Boddie, 401 U.S., at 378, 91 S.Ct., at 786.  In general, "something less" than a full evidentiary hearing is sufficient prior to adverse administrative action.  Mathews, 424 U.S. 319, 96 S.Ct. 893.

As applied to the case at bar, the uncontested facts show that Colegio appealed in writing (or sought reconsideration from) Consejo's conclusion that it lacked jurisdiction to entertain its license renewal request not less than three (3) times, to wit, on January 12, 2016, August 5, 2016 and November 16, 2016.  At all times, Consejo answered in writing, explaining in detail the reasons for its denial, namely, the change in law and regulations.  After Colegio's last appeal, it sought an administrative hearing, which Consejo granted.  During said hearing, the parties appeared with legal counsel of their choice, documentary evidence was stipulated and presented, testimony from witnesses was heard, and an opportunity to cross examine said witnesses was afforded.

While it is true that the evidentiary hearing was held six (6) months after the

license was suspended, it is important to note that Consejo always upheld its initial determination that a license was not needed for Colegio to continue operating.  It was Colegio's insistence that it did need a license – and its own decision to close the school - that brought Colegio to its predicament.   Furthermore, the hearing was held less than two (2) months after Colegio requested it.

The constitutional significance of a delay must be evaluated considering "the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken." Federal Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 242, 108 S.Ct. 1780, 102 (1988).

Applying these factors to the instant case, any delay in conducting Plaintiffs' post-deprivation hearing, even if unjustified, was not constitutionally significant. The uncontested record evidences that Consejo's decision to cancel Plaintiffs' license was affirmed by the Hearing Examiner following the January 24, 2017 hearing.[5]   This conclusion was later also affirmed by the Puerto Rico Court of Appeals.  Plaintiffs have not alleged that an earlier hearing would have changed this outcome.  While Plaintiffs' interest in their license was strong, Plaintiffs have not demonstrated that the delay caused any harm to that interest or that there was a high likelihood that the interim decision was mistaken.  Mallen, 486 U.S. at 242, 108 S.Ct. 1780; *accord* Berman v. Young, 291 F.3d

_____

[5] This is in line with the same reasoning that Consejo previously gave in writing to Plaintiffs, from day one in writing on two (2) different occasions as justification for its actions.

_____

976, 985 (7th Cir. 2002) (requiring a plaintiff to establish, "with some degree of probability, that a timely hearing would have prevented the extended infringement on [protected] rights" (internal citation omitted)); see also Mathews, 424 U.S. at 349, 96 S. Ct. at 910 (holding that an evidentiary hearing was not required prior to the termination of disability benefits and that 11 month delay complies with due process). Therefore, the delay in conducting the hearing did not render it non-meaningful and did not violate due process.

Colegio then appealed Consejo's determination to the Puerto Rico Court of Appeals which again found Consejo had acted correctly. Colegio then appealed to the Puerto Rico Supreme Court, which ultimately denied certiorari and Colegio then requested reconsideration of said denial. In sum, Colegio has had seven (7) distinct and separate opportunities (eight (8), counting the present case) to present its case before various forums, including a full hearing, and a judicial appeal of the outcome of that hearing. The Court can hardly conclude that Colegio's due process rights have been violated. The Constitution requires no more process than the one followed in this case.

Colegio argues in its defense that there have been no previous findings of administrative irregularities or non-compliance with licensing requirements in support of its due process argument. It also avers that, because Act No. 1 was the law that pulled Colegio's academic offering from Consejo's jurisdiction, Colegio's license had therefore been "de facto" revoked since 2010 instead of 2015. The Court does not agree.

Regarding the lack of administrative irregularities, Colegio points to no evidence or caselaw in support of its argument that this "good behavior" somehow now entitles it

_____

to a license.  Furthermore, the fact that there were no irregularities has no bearing on the facts of this case - that the law and regulations changed.

Regarding the alleged revocation in 2010, there were no adverse effects to Colegio after the implementation of the 2010 Act.  On the contrary, Colegio continued to operate normally, issued its certifications and diplomas and has neither alleged nor brought forth evidence of any ulterior actions or harm that it suffered because of the amendment to the law prior to 2015.  *It was only when Colegio sought to renew its license in 2015* that it learned that Consejo could longer offer it accreditation.  Thus, Colegio's allegation that its license was "unlawfully revoked" prior to it seeking renewal in 2015 has no basis in fact, as it is evident that the amendment of the law only had consequences *after* Colegio sought the renewal in 2015.[6]  Once Colegio was notified that Consejo lacked jurisdiction to license it, it was offered all the process that was due, and more.[7]

Colegio also argues that the administrative process that it went through was slow, protracted and cumbersome, frequented by lengthy delays and by repeated requests for supporting and supplementary documents and information.  The Court examines the timeline in question.

October 28, 2015- Colegio filed its license renewal petition.

November 10, 2015- Consejo wrote to Colegio seeking more information about its programs.

_____

[6] Plaintiffs, in fact, admit that Colegio shut its doors and has suffered due to lack of income since 2015. That is, when the License was cancelled, not before.  See Docket No. 1. ¶ 3.21.
[7] The Court notes that Consejo was clear in its determination that no license was necessary pursuant to the courses and accreditation offered at that time, but if Colegio's course offerings changed in the future pursuant to the applicable regulations, it was free to reapply for a license.

November 17, 2015- Colegio answered Consejo's information petition.

December 21, 2015- Consejo notified Colegio that it lacked jurisdiction to hear its claims.

January 12, 2016- Colegio presented its first written objection to Consejo's determination.

April 28, 2016- Consejo's President sent Colegio's objection to the Board of Governance for it to resolve the matter.

June 30, 2016- the Board of Governors met and determined that it lacked jurisdiction to issue a license to Colegio, for the same reasons already stated in the December 21, 2015 letter.

August 6, 2016- Colegio filed its second written objection to Consejo's determination.

November 4, 2016- Consejo again informed Colegio that it lacked jurisdiction to hear it claims, and that a license from them was not required for Colegio's offering.

November 16, 2016- Colegio filed its third written objection.

November 17, 2016- Colegio petitioned for an administrative hearing.

January 24, 2017- the administrative hearing was held, where both parties were represented by counsel and presented evidence and testimony before a Hearing Examiner.

April 28, 2017- Consejo approved the Report and Recommendation issued by the Hearing Examiner, which denied the objection and challenge raised by the Colegio and concluded that pursuant to Act No. 1 and Regulation 8562, Consejo no longer had

jurisdiction to issue of a license over Colegio's academic offer.

May 24, 2017 - Colegio was notified of Consejo's decision.

June 5, 2017- Colegio sought reconsideration from Consejo, a request which Consejo never acted upon.

In the present case, the complete process, which started when Colegio filed its first objection in January 2016, ran for a year and a half, which as Defendants argue, is not an unreasonable delay nor an undue burden.  Furthermore, the Court finds that Consejo responded promptly to all of Colegio's written objections.  Colegio could have asked for a hearing at any time, instead of filing three (3) different written objections and waiting almost a year before doing so.  If nothing else, the Court finds that the delay seemed to stem in part from the thoroughness of the procedures, and Plaintiffs offer no evidence or caselaw to support their argument that the year and a half wait was unreasonably prolonged (other than the fact that the process took a year and a half).[8]  The fact that the Puerto Rico Court of Appeals upheld the Hearing Examiner's ultimate conclusion and Consejo's position from the beginning does nothing to help Plaintiffs' argument.  Simply put, the chronology of the proceedings set out in the Complaint, coupled with the assertion that it was "slow, protracted and cumbersome", by itself, do not establish a constitutional deprivation. See *e.g.* Cleveland Bd. of Educ, 470 U.S. 532, 105 S. Ct. 1487.

In sum, the Court cannot discern that violations of due process occurred here. On the contrary, Colegio was offered a myriad of opportunities to appeal and refute Consejo's

_____

[8] As previously discussed, approximately six (6) months passed between the time Colegio's license was cancelled and the evidentiary hearing was held, a span which the Court does find unreasonable or unconstitutional.

_____

determinations, in at least two (2) different forums and after a full evidentiary hearing. In the end, the fact that Plaintiffs can no longer teach courses for which they are "eminently qualified" and which are now "not economically viable" for them, without more, cannot serve to establish the basis of a Constitutional violation. Docket No. 1, p. 16, ¶ 3.20.[9]

In sum, finding no constitutional Due Process violation present, the qualified immunity analysis need not move forward.[10]

## C. Equal Protection.

Plaintiffs allege an Equal Protection claim in the Complaint in passing, stating that Defendants' actions, "deprived and continue to deprive Plaintiffs of the equal protection of the laws". Docket No. 1, p. 1, ¶ 1.2. Although Defendants failed to include this in their briefs (perhaps because Plaintiffs failed to barely mention it in the Complaint), the Court finds there are no Equal Protection violations in the present case.

The Equal Protection Clause of the Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. Plyler

_____

[9] Blaming Consejo for the alternative outcome of this case, Plaintiffs proffer that they suffered harm because the fact that Plaintiffs now "offer and teach training and/or continuing education courses for which they may only issue certificates of participation", and this …"is not an economically-viable option for Plaintiffs, because such training and/or continuing education courses are not in sufficiently high demand to enable Plaintiffs to derive sufficient income to cover their operational expenses by offering and teaching such courses", and… "offering and teaching only training and/or continuing education courses implies a gross under-utilization of Plaintiffs' qualifications, resources, capacities and facilities."

[10] Before reaching qualified immunity, the court "must ascertain whether the appellants have asserted a violation of a constitutional right at all". Watterson v. Page, 987 F.2d 1, 7 (1st Cir. 1993) (citing to Siegert v. Gilley, 500 U.S. 226, 230, 111 S.Ct. 1789, 1793 (1991)).

v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394 (1982).  Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have devised standards for determining the validity of state legislation that is challenged as denying equal protection.  The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.  Schweiker v. Wilson, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080 (1981); United States RR. Ret. Bd. v. Fritz, 449 U.S. 166, 174-175, 101 S.Ct. 453, 459-460, (1980); City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439-40, 105 S. Ct. 3249, 3254 (1985).

When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern.  New York City Transit Auth. v. Beazer, 440 U.S. 568, 99 S.Ct. 1355 (1979).  However, most laws classify, and many affect certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law.  Thus, the basic concern of the Equal Protection clause is with legislation whose purpose or effect is to create discrete and objectively identifiable classes; that is to say, it measures the validity of classifications created by state laws.  And with respect to such legislation, it has long been settled that the Equal Protection clause is violated only by laws that are invidiously discriminatory. In other words, it is violated by classifications that are wholly arbitrary or capricious.  San Antonio Indep. Sch. Dist. v. Rodríguez, 411 U.S. 1, 60, 93 S. Ct. 1278, 1310 (1973).

In the instant case, Plaintiffs have not alleged, much less presented evidence, of any discriminatory classes or classification affected by the law in question. At all times

_____

Plaintiffs (Larrieux and Colegio) refer to themselves as the only ones affected, and there is no mention of any other affected class or classification or arbitrariness. For this reason, the Equal Protection claim cannot lie.

In conclusion, there is no constitutional Equal Protection violation present. Thus, the qualified immunity analysis need not move forward, as above mentioned in the Due Process analysis. Furthermore, having found that there are no constitutional violations in the case at bar, there cannot be a §1983 violation by any of the individual Defendants.

Accordingly, it is recommended to the Court to DISMISS WITH PREJUDICE the §1983 claims.

**D. Res Judicata/Collateral Estoppel.**

Finally, as an additional reason for dismissal, the Court finds that preclusion principles apply to Plaintiffs' claims.

It is well settled law that the doctrine of res judicata (or claim preclusion) and collateral estoppel (or issue preclusion) under both federal and state court jurisprudence preclude re-litigation of claims and/or issues which have been litigated in a prior judicial action for which judgment has been rendered. Báez-Cruz v. Municipality of Comerío, 140 F.3d 24 (1st Cir. 1998); Apparel Art Int'l v. Amertex Enters., 48 F.3d 576 (1st Cir. 1995). Additionally, preclusive effect is given not only to state judicial proceedings, but it is also applicable to facts found by a "state agency acting in a judicial capacity [that] resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." University of Tenn. v. Elliott, 478 U.S. 788, 798, 106 S.Ct. 3220, 3226 (1986).

It has long been held that the applicable collateral estoppel rules are not federally created, but are those of the state from which the judgment is taken. Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481-82, 102 S.Ct. 1883, 1897-98 (1982). Because the judgment in question was entered by a state agency and later, a state court, the applicability of estoppel principles is a matter of state law. Kremer, 456 U.S. at 481–82, 102 S.Ct. 1883.

Puerto Rico's doctrine of preclusion, codified at P.R. Laws Ann. tit. 31, § 3343, states in pertinent part: "In order that the presumption of res judicata be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes and persons of the litigants, and their capacity as such". The parties must also have had a full and fair opportunity to litigate the claims. Báez-Cruz, 140 F.3d at 30.

The issue in the present case therefore is whether preclusion applies to those issues which have already been litigated by the parties and adjudicated by Consejo's Hearing Examiner and later, affirmed by the Puerto Rico Court of Appeals.

Defendants argue that, in administrative proceedings before Consejo's Hearing Examiner and later the Puerto Rico Court of Appeals, Plaintiffs raised the same issues of misinterpretation of the law and Due Process. Defendants further aver that Plaintiffs had a full and fair opportunity to litigate all claims both before the Hearing Examiner as well as the Puerto Rico Court of Appeals. Hence, Plaintiffs are now precluded from relitigating those issues in this case.

In turn, Plaintiffs posit that res judicata is inapplicable because the decisions

_____

before the Hearing Examiner and the Puerto Rico Court of Appeals court were limited to what Consejo decided in the context of the revision of an administrative decision and did not go into Plaintiff's allegations "in detail".

      1.  <u>Identity of parties</u>

The parties in the administrative proceedings were Colegio and Tomás Larrieux, and co-Defendant Consejo and Aponte only.  In the present case, Defendant are Aponte, Rivera, Báez and Varas, in their official and personal capacities.  Nonetheless, as Defendants candidly point out, under <u>Will v. Mich. Dep't. of State Police</u>, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989), a suit against a state official in his or her official capacity is a suit against the state itself.  Hence, the suit against the individual Defendants in their official capacities is really a case against Consejo.  Defendant argue that, since Consejo's officials participated in the previous case by exercising substantial control over the named party (Consejo) in the administrative and later, state court proceedings, identity of parties exists. The Court agrees.

The fact that one official and Consejo were sued before and several officials and Consejo were sued now makes no difference because they are all acting in the same capacity, to wit, as Consejo's officials which took the allegedly harmful actions. Furthermore, although the language of the provision calls for "the most perfect identity of persons" between the first and second case, the Court of Appeals for the First Circuit has expressed on several occasions that the Puerto Rico courts do no interpret this requirement strictly.  <u>See</u>, *e.g.*, <u>Futura Dev. Corp. v. Centex Corp.</u>, 761 F.2d 33, 43 (1st Cir. 1985).

The preclusion statute itself goes on to provide that when "there is identity of persons whenever the litigants of the second suit are legal representatives of those who litigated in the preceding suit, or when they are jointly bound with them or by the relations established by the indivisibility of prestations among those having a right to demand them, or the obligation to satisfy the same". P.R. Laws Ann. tit. 31, § 3343. The First Circuit has often read this provision as permitting issue preclusion to operate against a plaintiff who, like in the present case, adds defendants in the second action. See Futura, 761 F.2d at 43; Republic Sec. Corp. v. Puerto Rico Aqueduct and Sewer Auth., 674 F.2d 952, 955–56 (1st Cir.1982); cf. De León v. Colón, 42 P.R.R. 21, 27 (1931) (permitting preclusion based on previous action that included additional defendants).

Consejo and its officers share, in the words of § 3343, the "obligation to satisfy the same [claim]." Thus, the Court finds this shared obligation is sufficient to find identity of parties is met here for those parties who were not present in the state proceedings.

    2.  Identity of things and causes.

Aa previously stated, Puerto Rico courts do not interpret the phrase "perfect identity" literally. See Cruz v. Melecio, 204 F.3d 14, 19 (1st Cir. 2000); Futura Dev. Corp., 761 F.2d at 43-45. For preclusion purposes, "[t]he thing corresponds basically to the object or matter over which the action is exercised." Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R. 533, 535 (1975). "Cause" refers to the main ground or origin of the action. Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 61-62 (1st Cir. 2000). The test for identity of "things" is whether a decision in the second action may contradict the prior adjudication. A & P Gen. Contractors, Inc. v. Asociación Caná, 110 D.P.R. 753, 763 (1981).

_____

The Court finds that both, identity of things and causes, are present in the case at bar.

Plaintiffs allege that, at the administrative agency and subsequently before the Puerto Rico courts, Colegio's license was not renewed due to Defendants' erroneous interpretation of the applicable statute and regulations. Plaintiffs also claim they were not afforded due process. That is the same reason why Colegio brings the present case, alleging that: "[t]he adverse Final Resolution dated May 18, 2017 issued by the CONSEJO DE EDUCACION against the COLEGIO is based on clearly erroneous interpretations of applicable Puerto Rico laws and regulations, including, but not limited to, the "Plan de Reorganización Núm. 1" of the Commonwealth of Puerto Rico dated July 26, 2010 and/or of Regulation ("Reglamento" in Spanish) No. 8562 for the Licensing of Basic Educational Institutions…". (Docket No. 1, p. 15, § 3.18).

Plaintiffs now allege that the challenged actions also violated their civil rights and they now raise a claim for injunctive relief. Plaintiffs contend these allegations were not previously raised in the state procedures. However, these claims in no way change the fact that the *main underlying cause of action* both in this case and in the state forums is Consejo's alleged misinterpretation of Act No. 1 and regulations, and the subsequent denial of Colegio's license renewal and alleged lack of due process. The present action derives from the same nucleus of operative facts, and a ruling in Plaintiffs' favor in the present case would obviously contradict the earlier determinations made by both the Hearing Examiner and the Puerto Rico Court of Appeals.

Furthermore, it is well-established that judicially reviewed administrative fact-finding may later estop a federal claim, even though the state administrative body itself

_____

was unable to consider the federal claim as such. See, *e.g.*, Gonsalves v. Alpine Country Club, 727 F.2d 27, 28-29 (1st Cir. 1984). In the case at bar, the Puerto Rico Court of Appeals reviewed the agency's findings and found them correct. Simply put, Plaintiffs cannot now prevail on their federal claim consistently with the prior (and now final and unappealable) administrative and Appellate findings that Consejo's actions were consonant with the law and that Consejo afforded Plaintiffs due process of law.

The administrative and state claims derived from the same nucleus of operative facts and raised the same issues that are now raised in this case. Identity of causes and things is present. Consequently, a ruling for Plaintiffs now would contradict the earlier rulings.

### 3. Full and fair opportunity to litigate

Plaintiffs also claim that the administrative and appellate proceedings deprived them from a full and fair opportunity to litigate required of any decision later given preclusive effect. To meet this standard, "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." Kremer, 456 U.S. at 481, 102 S.Ct. at 1897.

Plaintiffs' main proposition is that they were unable to argue their federal constitutional claims before because the Commonwealth's proceedings were restricted to the limited and specific context of judicial review of Consejo's decision as an administrative agency and not in the context of a civil rights claims or injunctive relief. The Court already addressed this issue in the previous section and found that the same issues presented before the Hearing Examiner are the basis of Plaintiffs' federal

constitutional claims, notwithstanding the additional, ancillary claims for injunctive relief and civil rights.

The Court must additionally note, however, that the administrative proceedings afforded Colegio a full and fair hearing at the administrative level. There, Colegio appeared with counsel, presented evidence and cross-examined witnesses regarding its allegations that Consejo was misinterpreting the law and failed to afford it due process. This is the equivalent of a full-blown trial.

Colegio was then able to appeal that holding before the Puerto Rico Court of Appeals, where it again argued the Consejo had misunderstood the law.   Additionally, it is evident from a reading of said court's opinion that Plaintiffs on two (2) different occasions raised the due process argument, namely, in their third written objection during the administrative appeal and later, before the Puerto Rico Court of Appeals.  That court then made a *specific* finding that Consejo acted correctly regarding the licensing issue and that Colegio was afforded due process.[11]   Given this factual scenario, Plaintiffs are hard pressed to say that they did not have a full and fair opportunity to litigate their claims.

In sum, all elements for Puerto Rico's preclusion statute are present in this case. As such, it is recommended to the Court that the administrative determination and the

---

[11] As to Colegio's due process argument, the Court of Appeals specifically stated... "It is in this analysis that the Council determines that the academic offer of the Colegio is part of the exceptions contained in Section 3.2.4 of Regulation 8562. *To reach this conclusion the Council guaranteed the due process of law of the Petitioner.* Our legal framework has established that "[i]n all formal adjudicative proceedings before an agency, safeguards will be observed over the following rights: (A) The right to timely notice of charges or grievances or claims by one part against another; (B) the right to present evidence; (C) the right to an unbiased adjudication; (D) the right to have a decision based on the record on file". P.R. Laws Ann. tit. 3, § 2151. *In the case at hand, a hearing was held before an impartial official and the Colegio was allowed to present evidence, cross examine witnesses of the Council and the decision is reasonably supported by the file on record*". (Emphasis added).  (Docket No, 46, Exhibit 1). In any event, this Court now has analyzed Plaintiffs' due process claim again and has found it wanting.

_____

Court of Appeals' decision be given preclusive effect and that Plaintiffs' Complaint be

DISMISSED on this additional ground.

## CONCLUSION

For the reasons explained above, it is recommended to the Court to GRANT the

Motions for Summary Judgment filed by co-Defendants Consejo and Varas, Rivera and

Báez (Docket No. 124) and co-Defendant Aponte (Docket No. 125), and all causes of action

brought by Plaintiffs be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and

recommendation. See Amended Local Rules. Failure to file same within the specified time

waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150–

151(1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986) and Paterson-

Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988).

In San Juan, Puerto Rico, on this 10th day of December 2019.

> S/CAMILLE L. VELEZ-RIVE
> CAMILLE L. VELEZ RIVE
> UNITED STATES MAGISTRATE JUDGE