## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

DR. TOMÁS LARRIEUX-CRUZ,
<u>ET AL.</u>,

     **Plaintiffs,**

     **v.**

CONSEJO DE EDUCACIÓN DE
PUERTO RICO, <u>ET AL.</u>,

     **Defendants.**

**CIVIL NO. 17-2030 (PAD)**

## OPINION AND ORDER

Delgado-Hernández, District Judge.

This is an action under 42 U.S.C. §§ 1983 and 1988 arising out of an educational organization's failed attempt to renew a license with the Consejo de Educación de Puerto Rico ("Consejo"). The U.S. Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the case be dismissed. Because the court is persuaded that dismissal is appropriate, the Complaint is hereby DISMISSED.

## I.    <u>INTRODUCTION</u>

Plaintiffs, Colegio Universitario de Mediación Profesional, Inc. ("CUMPI") and its owner and principal executive officer, Tomás Larriéux-Cruz, sued Consejo and Consejo's officers, questioning on federal constitutional grounds the Consejo's decision to: (1) deny a license renewal request to CUMPI based on the Consejo's understanding that it lacks jurisdiction over CUMPI's course offering, which the Consejo considers exempt from relevant license requirements; (2) cancel a license previously issued to CUMPI in 2003, renewed in 2007 and in 2011, because CUMPI does not need it to operate; and (3) decree that CUMPI cannot use the term Colegio Universitario ("University College") as part of its institutional name or advertising, for it is not an

institution of higher learning offering associate or bachelor degrees to its students and course registrants (Docket No. 1).

Plaintiffs unsuccessfully challenged the Consejo's decision before the Puerto Rico Court of Appeals ("CA") and Supreme Court. While the case was pending in the Puerto Rico Court of Appeals, they initiated the present action for declaratory and injunctive relief, damages, pre-judgment interest, costs and attorney's fees against the Consejo and the individual defendants in their personal and official capacities, alleging violations of due process and equal protection of the laws under the Fifth and/or Fourteenth Amendments (Docket No. 1). Defendants moved to dismiss (Docket Nos. 18, 52) and in due course, for summary judgment (Docket Nos. 124 and 125).

The court referred the motions for summary judgment to U.S. Magistrate Judge Camille L. Vélez-Rivé for an R&R (Docket No. 130), which she issued (Docket No. 139), recommending in part that the action be dismissed on the merits and on res judicata. Id. Before the court are the Magistrate Judge's R&R (Docket No. 139); plaintiffs' objections to the R&R (Docket No. 146); defendants' response to plaintiffs' objections (Docket Nos. 151 and 154); plaintiffs' replies to defendants' response (Docket Nos. 157 and 158); and "Co-Defendant Ricardo Aponte-Parsi's Opposition to Plaintiffs' 'Sur-Reply'" (Docket No. 158) to Report and Recommendation of Dismissal" (Docket No. 159). The R&R is adopted along the terms discussed below.

## II.    REFERRAL

A district court may refer dispositive motions to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B)(setting forth authority to designate a magistrate judge to submit proposed findings of fact and recommendations for any motion excepted in subparagraph (A), including a motion for summary judgment); Fed.R.Civ.P. 72(b)(regulating magistrate judge's recommended disposition of pretrial matters dispositive of a claim or defense);

Loc.Civ.R. 72(referrals from district judge to magistrate judge for proposed findings of fact and recommendations regarding, among other motions, motions for summary judgment). Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report. See 28 U.S.C. § 636(b)(1)(objections to magistrate judge's proposed findings and recommendations); Loc. Civ. Rule 72(d)(same).

A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." Ramos-Echevarría v. Pichis, Inc., 698 F.Supp.2d 262, 264 (D.P.R. 2010). The objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection." Vélez-Padro v. Thermo King de Puerto Rico, Inc., 465 F.3d 31, 32 (1st Cir. 2006). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-judge." 28 U.S.C. § 636(a)(b)(1).

### III.  REPORT AND RECOMMENDATION

####   A. Background

CUMPI is an educational corporation organized under the laws of the Commonwealth of Puerto Rico, with principal place of business in Aguadilla, Puerto Rico (Docket No. 139, p. 1). It offered courses in alternate dispute resolution, negotiation and professional mediation, dispensing certificates and diplomas to participants. Id. In 2003, the Puerto Rico Council on General Education issued License V-50-23, authorizing CUMPI to operate a private school at the vocational, technical and postsecondary non-university level in Puerto Rico. Id. at p. 2. The license was valid for up to four years (Docket No. 46-1, p. 5; Docket No. 139, p. 2). It was renewed

at CUMPI's request in 2007 and 2011. Id. With the latest renewal, the license was valid until

November 19, 2015 (Docket No. 126-1, p. 8, ¶ 14).[1]

In 2010, the Puerto Rico Legislature enacted Reorganization Plan No. 1, P.R. Laws Ann.

tit 3 (Ap. XII), eliminating the Puerto Rico Council on General Education and the Puerto Rico

Council on Higher Education and, among other things, fusing both entities' powers, duties and

responsibilities into the Consejo, which became the governmental agency in charge of

implementing and administrating public policy concerning educational standards in Puerto Rico,

and of licensing public and private institutions that provide basic and higher education in the

Commonwealth (Reorganization Plan No. 1, Article 4 [Docket No. 18-8], p. 8; Docket No. 126-1,

p. 3 , ¶ 7; Docket No. 139, pp. 1, 6). It has authority to deny, modify, alter, amend, cancel or

suspend licenses or accreditations previously granted by its statutory predecessors to educational

institutions (Reorganization Plan No. 1, Article 9(j) [Docket No. 18-8], p. 11; Docket No. 33-2, p.

2). In 2012, it replaced Regulation 6245 with Regulation 8310 (Docket No. 46-1, p. 5), and on

February 24, 2015, adopted Regulation 8562. Id. at p. 3.

On October 28, 2015, CUMPI applied to the Consejo for a four-year extension or renewal

of License V-50-23 (Docket No. 126-1, pp. 8-9, ¶ 15). On December 21, 2015, the Consejo's

Accreditation and Licensing Area notified CUMPI that: (1) in light of Regulation 8562, CUMPI's

academic offering was exempt from the licensing requirement set in the regulation, and therefore,

does not fall within the Consejo's jurisdiction (although that does not prevent CUMPI from

---

[1] The November 19, 2015 license expiration date appears in the Consejo's and individual defendant's "Statement of Uncontested Facts" (Docket No. 124-1, p. 8, ¶ 14), which plaintiffs admitted (Docket No. 126-1, p, 8, ¶ 14). The CA, however, states that the license was in effect until October 19, 2015 (Docket No. 46-1, p. 2). The court uses the November 2015 date the parties have agreed on, which coincides with the date set in Consejo's Certification No. 2017-173 (Docket No. 136-1, p. 6, ¶ 5). At the end of the day, the difference is inconsequential for disposition of the issues raised here.

continuing to offer its courses); and (2) considering CUMPI's academic offering, it cannot use the term "Colegio Universitario." Id. at pp. 10-11, ¶ 18.

On January 11, 2016, CUMPI filed a notice of disagreement, requesting that Consejo renew the license and recognize the use of the term "Colegio Universitario" as part of CUMPI's institutional name and advertisement (Docket No. 126-1, p. 11, ¶ 19). Among other things, it argued that the Consejo's findings were based on clearly erroneous interpretations of applicable laws and regulations, and in violation of plaintiffs' due process and equal protection rights under the Constitutions of Puerto Rico and the United States (Docket No. 1, ¶ 3.12).

On April 28, 2016, the Consejo's Executive Director sent to CUMPI's President a letter acknowledging receipt of the written objection and stating that the case was referred to the Board of Governance to decide if CUMPI required a license from the Consejo to continue operations (Docket No. 46-1, p. 4). On June 30, 2016, the Consejo: (1) determined that CUMPI does not need a license from Consejo to operate as a postsecondary institution because its academic offering does not fall within the Consejo's jurisdiction; (2) cancelled License V-50-23 by way of Certification 2016-347; and (3) expressed the cancelation does not imply that CUMPI cannot go on offering continuing education and professional development training (Docket No. 126-1, p. 12, ¶ 22). On August 5, 2016, CUMPI presented a second notice of objections and request for reconsideration. Id. at p. 12, ¶ 22. On August 17, 2016, Consejo designated an Examining Officer, initiating the administrative adjudicative process. Id.

On November 4, 2016, Consejo notified an amendment to Certification 2016-347 (Docket No. 46-1, p. 4; Docket No. 139, p. 14). It reiterated that CUMPI's academic offerings lie beyond Consejo's jurisdiction, this, pursuant to Reorganization Plan No. 1 and Regulation 8562 (Docket No. 46-1, pp. 4-5; Docket No. 126-1, pp. 12-13, ¶¶ 23, 24; Docket No. 136-1, p. 4). It expressed

that renewal of License V-50-23 in 2011 was done analyzing Regulation 6245 but did not take into consideration changes brought by Reorganization Plan No. 1, which pulled out from Consejo's jurisdiction CUMPI's academic offering.  Id.  That led Consejo to annul Regulation 6245 and approve Regulation 8310 in 2012, which in turn was amended by Regulation 8562, the regulation in effect at the time that CUMPI presented the license renewal request in October 2015 (Docket No. 46-1, p. 5; Docket No. 126-1, p. 13, ¶ 24).  On November 16, 2016, CUMPI presented a third notice of objections with similar arguments to the ones it had previously proffered, added that the amendment to Certification 2016-347 violated due process, and asked for an administrative hearing (Docket No. 126-1, p. 15, ¶ 25; Docket No. 136-1, p. 4).[2]

On January 24, 2017, the parties participated in an evidentiary hearing before an Examining Officer (Docket No. 46-1, p. 5; Docket No. 126-1, p. 15, ¶ 26; Docket No. 136-1, p. 5).  They presented evidence (documents and witnesses) and were allowed to cross examine witnesses and to file proposed findings of fact and conclusions of law.  Id.  On April 24, 2017, the Examining Officer issued his Report (Docket No. 136-1, p. 2).  On May 18, 2017, the Consejo adopted the Examining Officer's report and recommendations and denied CUMPI's challenge, reiterating that pursuant to Reorganization Plan No. 1 and Regulation 8562, it no longer has jurisdiction to issue a license over CUMPI's academic offering (Docket No. 126-1, p. 15, ¶ 28).

Along this line, the Consejo pointed out that based on the unrebutted testimony of Nellie Wharton- Accreditation and Licensing Specialist in the Consejo (Docket No. 136-1, p. 5) -to which the Examining Officer accorded full credibility, the certificates and diplomas that CUMPI issued did not meet the definitions set in Regulation 8562 and are exempt from the Regulation, which

---

[2] The R&R states that the request for an administrative hearing was made on November 17, 2016 (Docket No. 139, p. 26).  Whether it was made on November 16th as the Consejo expresses in its Certification (Docket No. 136-1) or on November 17th does not change the result here.

was in effect when CUMPI applied for the license renewal (Docket No. 136-1, p. 11).  It explained that CUMPI's course offering falls within the definition of continuing education and its certificates are for attendance and participation in offerings of short duration of between 36 and 231 clock hours rather than for courses conducive to a comprehensive program of studies, and do not award a degree (Docket No. 136-1, p. 11; Docket No. 126-1, pp. 15-16, ¶ 28).  Thus, the Consejo sustained its determination that because it has no jurisdiction over CUMPI's offering, CUMPI does not need a license from the Consejo for its operation (Docket No. 136-1, p. 12; Docket No. 126-1, pp. 15-16, ¶ 28).

On July 17, 2017, plaintiffs filed a petition for judicial review of the Consejo's decision with the CA (Docket No. 126-1, p. 17, ¶ 31), which on February 28, 2018, upheld the Consejo's determination that in accordance with the laws and regulations in force at the time of the license renewal request, the agency had no jurisdiction over the courses that CUMPI offered (Docket No. 46-1, p. 1; Docket No. 126-1, p. 17, ¶ 32).  The CA observed that CUMPI did not present evidence that would lead the CA to conclude that "the exercise conducted by the administrative forum was erroneous or unreasonable" (Docket No. 46-1, p. 13).  It stated that "[t]to the contrary, upon evaluating the definitions of the concepts that are in controversy under … [Regulation 8562], that the [Consejo] invokes as reasons for not assuming jurisdiction, and the documentation that [CUMPI] presented during the administrative hearing, [the CA] determined that the conclusion of the administrative forum is reasonable."  Id.  On March 21, 2018, CUMPI filed a *Certiorari* petition with the Puerto Rico Supreme Court, which denied the petition (Docket No. 126-1, p. 17, ¶ 3313-1, p. 18).  On June 1, 2018, it denied a request to reconsider its initial ruling.  Id. at p. 18, ¶ 34).

**B.** **Legal Conclusions and Recommendations**

The Magistrate Judge examined the process that preceded and followed the Consejo's decision not to renew CUMPI's license, noting that CUMPI had seven distinct and separate opportunities to present arguments, including a full evidentiary hearing before an Examining Officer; review by the CA; and a *Certiorari* petition to the Puerto Rico Supreme Court (Docket No. 139, pp. 20-24). She found no due process violation, pointing out that "[t]he Constitution requires no more process than the one followed in this case." Id. at 24. Similarly, she found no equal protection violations. Id. at pp. 28-30. Given the absence of constitutional violations, she recommended dismissal. Id. at p. 30. Additionally, she concluded that all elements of Puerto Rico's preclusion statute are present here (Docket No. 139, p. 36). In consequence, she recommended that the administrative determination and the decision of the CA s' decision be given preclusive effect and the complaint be dismissed on this additional ground. Id. at pp. 36-37. Plaintiffs object to dismissal of the due process claim (Docket No. 146, p. 9, ¶ 11) and disposition of the case on res judicata grounds. Id. at p. 15, ¶ 18).[3]

---

[3] Plaintiffs did not object to the Magistrate Judge's analysis of, and recommendation respecting their equal protection claim. The Magistrate Judge's analysis and conclusion on this topic are legally correct and sustain dismissal of the equal protection action as a matter of law. See, R&R (Docket No. 139, at pp. 28-30). Also, the Magistrate Judge found an Eleventh Amendment bar to suit against the Consejo and evaluated whether the individual defendants are entitled to qualified immunity. See, R&R (Docket No. 139 at pp. 17-20, 28, 30)(discussing Eleven Amendment immunity and qualified immunity). But because she concluded that plaintiffs cannot prevail on the merits of the constitutional claims and the Puerto Rico preclusion statute bars the action, the court focuses on the objections noted in the text.

# IV.    DISCUSSION[4]

## A.  Res Judicata

On this issue, the question is, what is the "res judicata effect of a judgment of a Commonwealth court and thus … a judgment that under 28 U.S.C. § 1728 must be given full faith and credit." Grajales v. Puerto Rico Ports Authority, 923 F.3d 40, 43 (1st Cir. 2019).  In keeping with this statute, it is necessary to give the same res judicata effect to that judgment as the jurisdiction that issued it- Puerto Rico -would give it in its own courts.  Id.  Thus, to demonstrate that the judgment has res judicata effect in Puerto Rico, defendants must establish three elements: (1) the existence of a prior judgment on the merits that is final and unappealable; (2) a perfect identity of the parties and the capacities in which they acted; and (3) a perfect identity of thing or cause between both actions.  Id.  Even if they make that showing, res judicata effect may not be given to the state judgment if doing so would defeat the ends of justice, especially if reasons of public policy are involved.  Id.  By these standards, this case does not survive res judicata.

The CA's sentence is final and unappealable.  It followed an administrative, adjudicative, and judicial process that took place in the Consejo and was litigated before an Examining Officer, whose findings the Consejo adopted as part of its decision.  The CA reviewed the Consejo's determinations, upholding them.[5]  Plaintiffs attacked the CA's sentence in the Puerto Rico

---

[4] Plaintiffs object that the R&R does not make "one single reference" to their own opposing statement of uncontested facts (Docket No. 146, p. 2).  Yet this does not translate into an issue of substance.  First, plaintiffs do not contest the accuracy of any of the facts that the Magistrate Judge relied on.  Second, in the Opposing Statement of Uncontested Facts filed at Docket No. 126-1, plaintiffs admit most of the statements that were deemed uncontested in the R&R, and the qualifications made in some of the statements do not controvert them in any way.  Further, in the second Statement of Uncontested Facts at Docket No. 127-1, they admit all of the statements.  Third, with their objection, plaintiffs do not point to any fact that would alter the R&R's well-reasoned conclusions.  Fourth, that the Magistrate Judge did not agree with plaintiffs does not mean that she failed to consider their arguments.  Consequently, plaintiffs' disagreement is with the legal conclusions drawn from what have been identified as uncontested facts, not with the facts as such.

[5] The CA noted that the Consejo's decision "is reasonably supported by the file on record" (Docket No. 46-1, p. 13).

Supreme Court.  The Supreme Court declined to issue the writ and refused to reconsider its initial ruling, thus making the CA's judgment final and unappealable.  And there is no argument that the requirement of identity of parties and the capacities in which they acted is not met.  Although plaintiffs do not address the issue, the Magistrate Judge's analysis and conclusions on this topic are correct.  See, R&R at pp. 32-33 (discussing topic).

Plaintiffs posit or suggest that identity of things and causes does not exist, stating that the judgments of the CA and the Puerto Rico Supreme Court "were issued in the limited and specific context of judicial review of an administrative agency's – the Consejo's – decision and not in the context of a civil litigation for violation of plaintiffs' civil rights or a claim or claims for damages or injunctive relief in any way, shape or form" (Docket No. 146, p. 16).  Similarly, they assert that "res judicata and collateral estoppel are inapplicable by definition, because the intervention of the commonwealth courts was strictly limited to the revision of the decision made by the Consejo as an administrative agency; because the [CA] essentially deferred to the Consejo's expertise as an administrative agency without going into the plaintiffs' claim in detail; and because the Puerto Rico Supreme Court denied the plaintiffs' certiorari petition … without going into plaintiffs' allegations in detail."  Id.  That will not do.

Identity of thing or cause "refers to factual cause and is satisfied where two actions flow from the same principal ground or origin."  Grajales, 923 F.3d at 43.  A "mere difference in the legal theories on which two causes of action are grounded does not destroy the identity of thing or cause that otherwise exists between two suits arising out of a common nucleus of operative fact."  Id.  As a result, "there may still be an identify of thing or cause between the Commonwealth and federal actions- notwithstanding the different legal theories and remedies sought in each -if they share a common nucleus of operative fact."  Id.  Such is the case here.

The state and federal actions share a common nucleus of operative fact: CUMPI's unsuccessful attempt to renew License V-50-23. That plaintiffs expressly invoke the U.S. Constitution in the present case does not shield them from losing on res judicata. Take Grajales, 923 F.3d at 40, where the plaintiff claimed in the state and federal actions that he was dismissed from his employment in retaliation for complaining about safety issues in the workplace and/or participating in an investigation performed by Puerto Rico safety agencies. Id. at 44. In federal court, he added that by taking those actions against him, the defendant violated the First Amendment. Id. at 42-43. He lost in state court, and the federal case was dismissed on res judicata grounds. Id. at 42-45. Given that the cases shared the same operative fact, that plaintiff put forward a different legal theory and sought a different remedy in the federal action was of no consequence. Id.[6]

Like in Grajales, the state case and the present case share the same operative fact of license renewal denial. But there is more, as in both cases plaintiffs expressly raise due process concerns deriving from the same administrative decision. For instance, in January 2016 they presented in the Consejo a notice of disagreement, claiming that the Consejo's findings and resulting denial of the license or license renewal to CUMPI as well as the prohibition to use the term "Colegio Universitario" in CUMPI's institutional name and advertising violated plaintiffs' due process and equal protection rights under the Constitutions of Puerto Rico and the United States (Docket No. 1, ¶ 3.12). Similarly, in the third notice of objections that they filed before the Consejo in

---

[6] As the First Circuit described plaintiff's argument in that case, "Grajales … contends that the claims that the Secretary of Labor brought on his behalf in the Court of First Instance 'could not include a claim for damages of for [a] First Amendment violation' and was only for the 'purpose of reinstating [him]to his previous position' and to recover lost wages." Grajales,923 F.3d at 43. And it added, "We conclude that the District Court correctly determined that the two actions at issue here do share 'a common nucleus of operative fact' … As the [defendant] explains, in both actions Grajales 'claims he was dismissed from his employment in retaliation for complaining about safety issues in the workplace and/or participating in an investigation performed by [Puerto Rico safety agencies.]' Accordingly, we reject Gralajes' challenge on this score." Id.

November 2016, they alleged, among other things, that the Consejo committed "several violations
to due process of law" (Docket No. 113-1, p. 15).

Plaintiffs predicated "their petition before the [CA] on the argument that the Consejo's
refusal to renew the [CUMPI's] license was based on clearly erroneous interpretations of
applicable commonwealth laws and regulations, which clearly erroneous interpretations had
tainted the administrative process before the Consejo to the extent that plaintiffs' due process rights
had not been adequately protected by the administrative process" (Docket No. 113, p. 7). The
CA, however, found that the Consejo reached its conclusion guaranteeing due process of law
(Docket Non. 46-1, p. 13). And here, plaintiffs invoke due process violations flowing from the
same administrative decision that they challenged in state court (Docket No. 1, p. 2, ¶ 1.2, and pp.
15-16, ¶ 3.19).

In the same way, in both the state case and the federal case plaintiffs anchor their claim on
the allegation that the Consejo misinterpreted applicable law and regulations. In their January
2016 notice of disagreement before the Consejo, they "argued extensively" that the Consejo's
findings "were based on clearly erroneous interpretations of applicable laws and regulations"
(Docket No. 1, p. 12, ¶ 3.12), and that those findings "were in clear violation of [plaintiffs'] due
process and equal protection rights under the Constitutions of the Commonwealth of Puerto Rico
and the United States." Id. Similarly, they argued before the CA that Consejo's refusal to renew
CUMPI's license "was based on what were clearly erroneous interpretations of applicable
commonwealth law and regulations" (Docket No. 146, p. 6). And here they claim that Consejo's
decision "is based on clearly erroneous interpretations of applicable Puerto Rico laws and
regulations, including, but not limited to [Reorganization Plan No. 1] … and/or Regulation No.
8562" (Docket No. 1, p. 15, ¶ 3.18).

What is more, in both the state and the federal case plaintiffs lay out an identical thread: that when License V-50-23 was renewed in 2011, Reorganization Plan No. 1 – one of the grounds Consejo relied on to reach the decision not to renew the license -was in effect, and thus, having renewed the license in 2011, it abused its discretion when it did not renew the license in 2015. Along this path, the CA noted that plaintiffs- petitioner therein - -argued that "at the last renewal of License V-50-23, Reorganization Plan No. 1 was in force and full effect. Therefore, [the petitioner] argue[s] that the [Consejo] abused its discretion when it acted differently on this occasion")(Docket No. 46-1, pp. 12-13). So too in their objections to the R&R, where plaintiffs state, "[W]hy was [CUMPI's] request for renewal of its license in 2011 granted, when Act No. 1 was already approved and in effect?")(Docket No. 146, pp. 7-8), adding that, "not only in 2015, but also in 2011 when [p]laintiff applied for and was granted the renewal of its License … [the] license should not have been granted, however in 2011 it was. As such [p]laintiff rightfully had every expectation that its request for renewal in 2015 would be granted"). Id. at pp. 11-12 and at Docket No. 158, p. 4.

Furthermore, plaintiffs admit that they contend "and have always contended that the administrative process as followed by the Consejo was egregiously flawed, to the degree of clearly and hopelessly negating and invalidating plaintiffs' procedural due process rights and to the extent that the decision reached by the Consejo at the conclusion of said administrative process was clearly erroneous and clearly contrary to applicable laws and regulations such that the Consejo's Final Resolution enshrined not only a grossly negligent interpretation and application of commonwealth law, but a sham of a due process, thus in fact depriving [p]laintiffs of their federally protected constitutional rights without a due process of law" (Docket No. 126, p. 8). On this record, not only is the factual setting of the state and federal cases identical, arising out of a

common nucleus of operative fact, but the arguments mirror each other in identity for full preclusive effect.

Finally, there are no grounds to warrant application of the public policy exception to res judicata. Plaintiffs raise no such grounds, and the court discerns none. As the First Circuit pointed out in Grajales, "even the invocation of a constitutional right is not sufficient, in and of itself, to warrant application of the public policy exception." 923 F.3d at 44. So, it rejected the plaintiff's invitation in that case to apply the exception even though he argued that 'the Puerto Rico court frustrated the ends of justice by deciding the matter on documents only, at summary judgment." Id. If anything, the argument against the public policy exception is even more compelling here, where plaintiffs had a full and meaningful opportunity to litigate their claims at different levels, including at the administrative pre-adjudicative level, the adjudicative level before an Examining Officer in the Consejo, the CA, and the Puerto Rico Supreme Court.[7] In consequence, res judicata applies to bar plaintiffs' claims.

**B.  Due Process**

Even if res judicata did not apply, plaintiffs' due process claim would fail. The Fourteenth Amendment provides in part that the state may not deprive "any person of life, liberty, or property, without due process of law." U.S. CONST., amend. XIV. The Due Process Clause has both "substantive and procedural components." Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006). The substantive component guards against arbitrary and capricious government actions notwithstanding that facially fair procedures are used to implement them. See, Depoutot v.

---

[7] See also, Cloutier v. Town of Epping, 714 F.2d 1184, 1192, n.7 (1st Cir. 1983)("Even if defendants had violated plaintiffs' due process rights, the claim against the town would be barred on the basis of res judicata since the revocation occurred prior to the state court action and the claim could have been brought there")(internal citations omitted).

Raffaelly, 424 F.3d 112, 117-118 (1st Cir. 2005)(addressing issue); Licari v. Ferruzzi, 22 F.3d

344, 347 (1st Cir. 1994)(similar).  It focuses on "what" the government has done, as opposed to

"how and when" the government did it.  Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990).

The procedural component ensures that government "will use fair procedures."  Harron v. Town

of Franklin, 660 F.3d 531, 535 (1st Cir. 2011).  For these purposes, Puerto Rico is "the functional

equivalent of a state."  González-Droz v. González-Colón, 660 F.3d 1, 10 (1st Cir. 2011).

Due process claim may be properly brought pursuant to 42 U.S.C. § 1983.  This Section

"supplies a private right of action against a person who, under color of state law, deprives another

of rights secured by the Constitution or by federal law."  42 U.S.C. § 1983.  It is not in itself a

source of substantive rights but provides "a method for vindicating federal rights elsewhere

conferred."  Graham v. Connor, 490 U.S. 386, 394 (1989).  Puerto Rico "is considered equivalent

to a state for Section 1983 purposes" as well.  Aponte-Torres v. University of Puerto Rico, 445

F.3d 50, 55 (1st Cir. 2006).

(i)     Substantive Due Process

Plaintiffs allege that defendants' decision not to renew CUMPI's license for lack of

jurisdiction and to cancel the license for CUMPI's course offerings deprived them of their property

without due process of law, because the decision was flawed, based on clearly erroneous

interpretations of applicable laws and regulations, including but not limited to, Reorganization

Plan No. 1 and Regulation 8562. (Docket No. 1, p. 15, ¶ 3.18-¶ 3.19).  A person is not deprived of

due process merely because a local agency does not agree with his legal interpretation.  See, Tucker

v. City of Chicago, 907 F.3d 487, 495 (7th Cir. 2018)(examining topic).  The Due Process Clause

does not take up the statutes of the several states and make them the test of what it requires.  See,

Hebert v. State of La., 272 U.S. 312, 316 (1926)(stating principle).

Besides, even assuming plaintiffs are right that the Consejo's interpretation of Reorganization Plan No. 1 and Regulation 8562 is incorrect, federal due process protection is not a guarantee that state governments will apply their own laws accurately. See, Tucker, 907 F.3d at 495 (so noting)(citing in part Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 467 (7th Cir. 1988)(holding that a village board's alleged misapplication of a municipal zoning ordinance did not present a due process concern)). Were the rule otherwise, federal courts would sit effectively as appellate tribunals over every state proceeding. See, Tucker, 907 F.3d at 495 (citing Gryger v. Burke, 334 U.S. 728, 731 (1948)("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question)). Thus, mere violation of state law does not give rise to a violation of the Due Process Clause. See, Creative Environments v. Estabrook, 680 F.2d 822, 833 (1st Cir.), *cert. denied*, 459 U.S. 989 (1982)(articulating formulation); FM Properties Operating Co. v. City of Austin, 93 F.3d 167, 174 (5th Cir. 1996)("Converting alleged violations of state law into federal … due process claims improperly bootstraps state law into the Constitution); Archie v. Racine, 847 F.2d 1211, 1218 (7th Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989)(so far as the Due Process Clause is concerned, "[S]tates may enforce, alter, or disregard [state law]").

Plaintiffs refer to Regulation 8562 as "arbitrary" (Docket No. 126, p. 18). A statute or regulation is arbitrary if it lacks a rational justification. See, Collins v. Nuzzo, 244 F.3d 246, 250 (1st Cir. 2001)(an action is legally irrational if it is not sufficiently keyed to any legitimate state interest); Dotson v. Shalala, 1 F.3d 571, 580 (7th Cir. 1993)(similar). On that basis, to successfully challenge the constitutionality of a regulation under the Due Process Clause, the party must show that "there is no rational relation between the regulation and a legitimate governmental objective."

Díaz v. U.S. Postal Service, 853 F.2d 5, 10 (1st Cir. 1988). The challenger has "the devoir of persuasion and must negate any and all conceivable bases upon which the challenged regulation might appropriately rest." González-Droz, 660 F.3d at 9. If any such ground exists to support the provision, the regulation must be upheld even if it is drawn from rational speculation unsupported by evidence or empirical data. Id.

The interests that Regulation 8562 purports to serve are unarguably legitimate. Article 2 of the regulation states that it was adopted in conformity with Reorganization Plan No. 1, a statute enacted in part to protect the public in connection with licensing of educational institutions, itself a legitimate state interest. See, Article 2 of Reorganization Plan No. 1 (Declaration of Public Policy)(Docket No. 18-8, pp. 2-5).

As Chief Justice Marshall observed more than two centuries ago, "[t]hat education is an object of national concern, and a proper object of legislation, all admit." Trustees of Darmouth College v. Woodward, 4 Wheat. 518, 634 (1819). So, the Supreme Court has long held that there "is no doubt as to the power of the State, having high responsibility for education for its citizens, to impose reasonable regulations for the control" of educational activities. Wisconsin v. Yoder, 406 U.S. 205, 213 (1972). And that power may be exercised to protect the integrity of educational degrees. See, Institute for Creation Research Graduate School v. Texas Higher Educ. Coordinating Bd., 2010 WL 2522529, *8 (W.D. Texas June 18, 2010)("… [The granting of academic degrees as evidence of academic achievement is very intimately related to the public welfare and is unquestionably subject to regulation by the State")(quoting Shelton College v. State Bd. of Ed., 48 N.J. 501, 511, 226 A. 2d 612, 618 (N.J. 1967)).

By this measure, it is hardly irrational for Regulation 8562 to exclude from licensing, organizations that, like CUMPI, do not issue degrees based on a comprehensive program of study

but rather diplomas based on courses of short duration, which certify attendance and participation, and continuing education courses, among other exclusions, and to place those organizations and courses beyond the scope of the Consejo's jurisdiction.[8]  Plaintiff has offered no authority to the contrary, and the court has found none.  Government action does not fail rational basis review because it "is not made with mathematical nicety or because in practice it results in some inequality."  Institute for Creation Research, 2010 WL 2522529 at *9 (sustaining state higher education board's decision to deny plaintiff a certificate of authority to offer a degree with a major in science education from a Biblical scientific creationist viewpoint)(quoting Dandridge v. Williams, 397 U.S. 471, 485 (1970)); Shelton College, 48 N.J. at 509-516, 226 A.2d at 616-620 (sustaining constitutionality of statute relating to granting of baccalaureate degrees).[9]

Plaintiffs categorize the Consejo's decision as "so shocking to the conscience" that it could constitute a substantive due process violation (Docket No. 146, p. 13; Docket No. 158, p. 5).  To sink to that level, the challenged action must be "truly outrageous, uncivilized, and intolerable."  González-Droz, 660 F.3d at 16.  However, courts have declined to recognize as conscience shocking, arguably identical or more egregious descriptions of administrative malfeasance than what plaintiffs have come up with.  See, González-Droz, 660 F.3d at 6-9, 16 (suspension of license pending hearing after a prospective change in regulation does not remotely approach the level of substantive due process violation implicated in the conscience shocking test); Collins, 244 F.3d at 251 (a contentious relationship between the plaintiff and board members that led to a denial of plaintiff's license renewal application does not shock the conscience); Licari, 22 F.3d at 350

---

[8] See. Regulation 8562, Section 3 (specifying scope of the regulation and exclusions).

[9] As the Court acknowledged in Shelton College, "… it is the degree, evidential as it is of academic attainment, which especially is an appropriate object of regulation," 48 N.J. at 511, 226 A. 2d at 618.  Further, it observed that, "… the claim that the public needs no protection with respect to a non-professional degree rests upon nothing more than argumentative assertion."  48 N.J. at 513, 226 A 2d at 618.

(revocation of building permits allegedly to force plaintiff to reduce the size of project not sufficiently conscious shocking); Amsden, 904 F.2d at 751, 757 (in qualified immunity context, that plaintiff's license was revoked to force his partner out of business not so shocking or violative of universal standards of decency as to transgress the Due Process Clause); Hogar Club Paraiso, Inc. v. Varela Llavona, 218 F.Supp.2d 157, 158-159 (D.P.R. 2002)(summary revocation of license to operate nursing home and relocating its residents to other facilities do not constitute conscience shocking behavior).[10]

    (ii)    Procedural Due Process

Plaintiffs argue that if Reorganization Plan No. 1 of 2010 pulled out CUMPI's academic offering from Consejo's jurisdiction, leading it to annul Regulation 6245, approve Regulation 8310 in 2012, and Regulation 8562 in February 2015, CUMPI'S license was in fact unlawfully revoked without due process **before** it asked that the license be renewed in October 2015 (Docket No. 158, p. 4; Docket No. 126, pp. 17-18). To their way of thinking, this is so because defendants did not notify CUMPI of their intention under Reorganization Plan No. 1 or Regulation 8562, of stripping it of its license due to a change in the regulation and/or interpretation that could have led to a termination and/or non-renewal of the license. Id.[11]

First, contrary to what plaintiffs allege, the license was not revoked before CUMPI applied for a renewal in October 2015. The license was valid until November 2015. CUMPI was allowed to operate after the adoption of Regulation 8562 in February 2015 as it had been operating at least since it renewed the license in 2011. There is no evidence that it was required to void or recall

---

[10] See also, Harron, 660 F.3d at 536 ("Even coming on the heels of the issuance to [plaintiff] of various building permits and food service licenses, the policy crack-down on the tavern- which had been serving liquor for four months without a license -was not truly outrageous, uncivilized, and intolerable …").

[11] Plaintiffs raise the same argument in their "Sur-Reply to 'Response by Co-defendant Ricardo Aponte Parsi to Plaintiffs' Objection to Report and Recommendation of Dismissal (Docket No. 154)," (Docket No. 158) at p. 4.

certificates or diplomas, to issue qualifying warnings to its recipients, or to return fees. The new provision did not attach new legal consequences "to events completed before its enactment." Landgraf v. USI Film Products, 511 U.S. 244, 269 (1994).[12] Like Reorganization Plan No. 1, Regulation 8562 only had consequences for CUMPI after CUMPI sought a license renewal in October 2015.

Second, inasmuch as Regulation 8562 applies on a class-wide basis, any change it may have brought about in the regulatory regime is cuasi-legislative rather than adjudicative. See, Hoffman v. City of Warwick, 909 F.2d 608, 620 (1st Cir. 1990)(citing in part Kizas v. Webster, 707 F.2d 524, 540 n.8 (D.C. Cir. 1983)("This claim of a due process right to [a government employee benefit] confuses disputes involving an individual's entitlement to a benefit with situations involving across-the-board revocation of the benefit itself"). The distinction is critical, for when property is affected by generally-applicable legislative action, property owners are not entitled to notice above and beyond the notice provided by the enactment and publication of the statute. See, United States v. Locke, 471 U.S. 84, 108 (1985)(addressing issue). In those circumstances, "the legislative determination provides all the process that is due." Hoffman, 909 F.2d at 619-620 (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982)).[13] And so

---

[12] In fact, even after the license expired, CUMPI was- and is -free to offer the same courses it had been offering.

[13] This is so even when the legislature enacts general legislation eliminating statutory rights or otherwise adjusting the benefits and burdens of economic life. See, Hoffman, 909 F.2d at 619-620 (acknowledging principle). See also, Smith v. Jefferson County Bd. of School Com'rs, 641 F.3d 197, 217 (6th Cir. 2011)("The Board's decision to abolish the alternative school [...] to save money was the result of weighing budgetary priorities, a legislative activity. Thus, because the Board was engaged in a legislative activity, there was no requirement that the teachers be given notice or an opportunity to be heard prior to the Board's decision to abolish the alternative schools. In such circumstances, the legislative process provides all the process that is constitutionally due when a plaintiff's alleged injury results from a legislative act of general applicability")(internal citations omitted); Gattis v. Gravett, 806 F.2d 778, 779, 781 (8th Cir. 1986)(while the legislative withdrawal from the definition of "personnel" covered by the civil service provisions, "those persons holding the rank of major and above," among others, in the office of the county sheriff of any county with a civil service system, may be a deprivation, the legislative process itself provided citizens with all of the process that they were due); Richard J. Pierce, Jr., ADMINISTRATIVE LAW TREATISE, Aspen Publishers (4th Ed.), § 9.2, p. 561 ("Procedural due process does not apply when government makes a policy decision that has an adverse impact

too with administrative decisions of a legislative or general rulemaking character. See, Air Line Pilots Ass'n v. Quesada, 276 F.2d 892, 894, 896 (2d Cir. 1960), *cert. denied* 366 U.S. 962 (1961)(rejecting argument that because regulation forbidding air carriers from utilizing pilots beyond the age of 60 was promulgated without the holding of adjudicatory hearings it was constitutionally defective, given that the regulation consisted of rule-making, not of adjudication).[14]

Admittedly, the principle of legislative notice does not extend to regulations that are not publicly available. See, City of West Covina v. Perkins, 525 U.S. 234, 242 (1999)("[N]otice of the procedures for protecting one's property interests may be required when those procedures are arcane and are not set forth in documents accessible to the public[.]").  But it is apparent that Regulation 8562 was published in Puerto Rico's Department of State on February 24, 2015, 30 days before its effectiveness date.  Consequently, to the extent plaintiffs complain that they should have received an individualized notice or some kind of individualized hearing **before** Consejo adopted Regulation 8562 and the regulation went into effect in March 2015, the law is not on their side.

---

on an entire classification of individuals or firms … even if that decision has the same effect on the interests of the members of the group as would an individualized deprivation.  The distinction between individualized deprivations, that are protected by due process, and policy-based deprivations of the interests of a class, that are not protected by procedural due process, is central to an understanding of the U.S. legal system").

[14] See also, U.S. v. Florida East Coast Ry. Co., 410 U.S. 224, 245 (1973)(…[Supreme Court] decisions represent a recognized distinction in administrative law between proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases on the other"); Interport Pilots Agency, Inc. v. Sammis, 14 F.3d 133, 142, 144-145 (2d Cir. 1994)(rejecting argument that a New York board's policy statement which had the effect of discouraging shippers from using the services of Connecticut pilots deprived the Connecticut pilots of property without procedural due process of law, as the statement "was essentially legislative rather than adjudicative" … "[o]fficial action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause" … and "[t]hese constitutional due process requirements apply only where the official action is designed to adjudicate disputed facts in particular cases)"(internal citations omitted).

Still, how the Consejo applied Regulation 8562 to CUMPI in the license renewal process by taking into account CUMPI's individual characteristics, may be properly analyzed under the procedural component of the Due Process Clause.  See, Richard J. Pierce, Jr., *supra* ("The Due Process Clause requires a hearing of some kind only when government deprives an individual of 'life, liberty, or property,' based on resolution of contested factual issues concerning that individual.  To prevail on a procedural due process claim involving a property interest, plaintiff must show that: (1) it has a property interest defined in state law; and (2) defendant deprived it of that interest without adequate process.  See, Jeneski v. City of Worcester, 476 F.3d 14, 17 (1st Cir. 2007)(stating test).[15]  No rigid taxonomy exists "for evaluating the adequacy of state procedures in a given case."  González-Droz, 660 F.3d at 13.  Instead, due process is flexible and calls for such procedural protections as the particular situation demands.  Id.  Whether the deprivation was, in fact, justified is not an element of the procedural due process inquiry.  Id.

Based on these standards, the court assumes that plaintiffs have a protected property interest in the license.[16]  Applying the appropriate matrix, then, courts generally "do not consider

---

[15] See also, Centro Médico del Turabo v. Feliciano de Melecio, 406 F.3d 1, 8 (1st Cir. 2005)(plaintiffs are required to identify a legitimate claim of entitlement to the property in question – a claim of entitlement created and defined by existing rules or understandings that stem from an independent source such as state law)(internal quotations omitted).

[16] The issue was not fully briefed.  This said, to establish a constitutionally protected property interest, a plaintiff must have more than an abstract need or desire for a thing, and more than a unilateral expectation of it.  See, Redondo-Borges v. U.S. Dept. of Housing and Urban Development, 421 F.3d 1, 8 (1st Cir. 2005)(so explaining).  He must have a "legitimate claim of entitlement to it."  Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  An individual who successfully satisfies the statutorily mandated requirements for a license, has a protected interest in the license.  DeSalle v. Wright, 969 F.2d 273, 277 (7th Cir. 1992)(examining topic).  Otherwise, he does not.  Id.  (rejecting procedural due process claim because plaintiff did not satisfy statutory requirements for a license, as such he had no claim of entitlement to it, and consequently, no protected interest in the license); Harron, 660 F.3d at 537 (rejecting procedural due process claim where, "… "the only property interest in which [plaintiff] … claimed a protected interest [was] the liquor license that was never transferred or issued to him.  However, property interests are defined by state law.  As a would be holder of a liquor license, [plaintiff] had no property interest in the license" (internal citations omitted).  In the instant case, the license was set to expire in November 2015, and CUMPI did not meet the regulatory requirements for a license to issue academic certificates and/or diplomas.  But that determination was made as part of an individualized screening of CUMPI's course offerings, a process that started before the license expired.  Hence, it is fair to assume that plaintiffs have a protected property interest in that license.  On the feasibility of so assuming,

pre-termination and post-termination procedures in isolation, but rather review the process in totality." Duhani v. Town of Grafton, 52 F.Supp.3d 176, 182 (D.Mass. 2014). With those procedures in place and operational, plaintiffs were afforded an adequate opportunity to be heard at a meaningful time and in a meaningful manner regarding the alleged deprivation of their property, License V-50-23.

CUMPI operated with the license it had renewed in 2011 until it requested renewal in October 2015. In that process, it was informed it no longer needed the license to operate. The license was cancelled after it expired.[17] But the Consejo explained its determination and underlying reasoning, and as mentioned earlier, granted plaintiffs an evidentiary hearing before an Examining Officer, where the parties appeared represented by counsel, presented evidence (documents and witnesses), and were allowed to cross-examine the witnesses – the equivalent of a full-blown trial – and to file post-hearing briefs with proposed findings of fact and conclusions of law (Docket No. 136-1, pp. 4-5; Docket No. 45-1, p. 5). The safeguards satisfied the constitutional standard in the agency. See, González-Droz, 660 F.3d at 15 ("The plaintiff had notice, an opportunity to be heard, and a right to present evidence to his own behoof. The Board's provision of these safeguards sufficed to meet the demands of due process").

What is more, the CA upheld the Consejo's decision, which became final and unappealable when the Puerto Rico Supreme Court denied plaintiffs' petition for certiorari and a motion to reconsider its initial ruling. A party's due process rights "are not violated when it may participate fully in an administrative agency proceeding and later seek state-court review." Liberty Cable Co.

---

see, Licari, 22 F.3d at 347 (assuming for purposes of the opinion that plaintiff held a property interest in the permits in question).

[17] If CUMPI's course offerings change, it is free to apply for a license. However, there is no evidence of any such change.

v. City of New York, 60 F.3d 961, 964 (2d Cir. 1995)(citing Kremer v. Chemical Construction Corp., 456 U.S. 461, 483-484 (1982)).  In these circumstances, plaintiffs received all process they were due.[18]

## V.    CONCLUSION

The Magistrate Judge's factual findings and the legal analysis of the constitutional claims and res judicata are well supported in the record.  They are hereby adopted as supplemented in this Opinion and Order.  In consequence, plaintiffs' claims are dismissed.  Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2020.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge

---

[18] The Magistrate Judge concluded that "any delay in conducting [p]laintiffs' post-deprivation hearing, even if unjustified, was not constitutionally significant" (Docket No. 139, p. 23)(in note 8 – id. at p. 27 – however, the R&R states otherwise).  Yet plaintiffs do not challenge the Magistrate Judge's discussion and conclusion in the text of the R&R, and in any event, the record does not reflect constitutionally prohibited delay.  As the Magistrate Judge observed, the delay seemed to stem in part from the thoroughness of the procedures.  Id.  The Consejo responded promptly to all of CUMPI's written objections.  Id.  It offered CUMPI a myriad of opportunities to refute the Consejo's determinations.  Id.  Plaintiffs could have asked for a hearing at any time, instead of filing three different written objections and waiting almost a year before doing so.  Id.  The hearing was held approximately two months after CUMPI requested it.  Id. at 23.  And there is no allegation, supported argument or evidence that an earlier hearing would have changed the outcome.  Id.  In short, the record does not show egregious delay "without any rational justification."  Kraebel v. New York City Depart. of Housing Preservation and Development, 959 F.2d 395, 405 (2d Cir. 1992), *cert. denied*, 506 U.S. 917 (1992).